UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARCUS WASHINGTON,

                      Plaintiff,

v.                                                   Case No. 11-CV-705-JPS

AGENT BYRON NEAL,

                      Defendant.                    ORDER

        The plaintiff, Marcus Washington ("Washington"), is incarcerated in Arkansas. He filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 claiming that his parole officer, defendant Agent Byron Neal ("Neal"), failed to provide him with a preliminary hearing after his arrest in Wisconsin in violation of the United States Constitution.[1] Neal has filed a motion for summary judgment, which will be addressed herein.

1.      SUMMARY JUDGMENT STANDARD

        "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

---

[1] On April 23, 2012, the court granted in part Neal's motion to dismiss, and thereby dismissed Washington's supplemental state law claim.

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

2. FACTUAL BACKGROUND

Neal is employed by the Wisconsin Department of Corrections as a probation/parole agent at the Division of Community Corrections in Glendale, Wisconsin.  In his capacity as a probation/parole agent, Neal's duties include the monitoring and supervision of offenders on community supervision.

Pursuant to Wis. Stat. § 304.16 and Ark. Code Ann. 12-51-101, Wisconsin and Arkansas are compacting states under Interstate Compact Adult Offender Supervision ("ICAOS"). The compact provides a framework for the supervision of adult offenders who are authorized to travel across state lines, in such a manner as to enable each compacting state to track the location of offenders, transfer supervision authority in an orderly and efficient manner, and, when necessary, return offenders to their original jurisdictions.

At all times relevant to this suit, Washington was on community supervision under the custody of the Arkansas Department of Corrections and was supervised by the Wisconsin Department of Corrections pursuant to the ICAOS. Neal was Washington's supervising agent at all times relevant to this lawsuit.

On or about April 13, 2011, Washington tested positive for the use of THC ("marijuana") and cocaine. The marijuana level was the highest possible level and the cocaine level indicated that he had used cocaine a few days prior to the test. On or about April 22, 2011, Washington tested positive for the use of marijuana. The marijuana level was the highest level possible.

On April 24, 2011, Washington was the passenger of a vehicle that was pulled over for a traffic stop by Milwaukee Police Department Officers Thomas Kresa and Thomas Multhauf. The officers arrested Washington for outstanding municipal warrants and took him to the Milwaukee Police Department District 4 police station for processing. While being processed, Washington acted in a disorderly manner when he refused to comply with fingerprinting, refused to be photographed, and refused to remove his shoelaces. The following day, a hold was placed on Washington's supervision, meaning Washington would continue to be held in jail as a result of his arrest. On April 26, 2011, Neal sent a Violation Report to the State of Arkansas informing them of Washington's arrest and that he tested positive for cocaine and marijuana on April 13, 2011.

When a hold is placed on a parolee for a violation, it is standard procedure for the supervising agent to get a written statement from the parolee. On April 29, 2011, Neal went to the House of Correction to get a statement from Washington. Prior to the statement, the parolee initials the

statement form indicating that they have read or have had read to them, the following warning:

> I have been advised that I must account in a truthful and accurate manner for my whereabouts and activities, and that failure to do so is a violation for which I could be revoked. I have also been advised that none of this information can be used against me in criminal proceedings. This warning statement does not apply to victim or witness.

(Neal Aff. ¶¶ 21-22, Ex. 1004.) Upon completing the statement, the parolee reads and signs the following statement: "I have read/had read to me this statement consisting of ____ page(s). This statement is a true and accurate account of my whereabouts and activities." (Neal Aff. ¶¶ 21, 23, Ex. 1004.) Neal warned Washington that the information in the statement must be truthful and accurate. Washington initialed the statement form acknowledging his understanding of the warning.

Washington told Neal that he and a friend were pulled over on their way to the store. The officer noticed Washington was not wearing his seatbelt and asked Washington for his identification. The officer returned to the car and told him he had three outstanding warrants. Washington admitted to drinking and using marijuana on April 24, 2011, and to using cocaine on April 22, 2011. Washington got mad while officers took his fingerprints and did not calm down until additional officers were present. Washington again got mad at the county and he was placed in a one-man cell until he calmed down. When Washington received money for school, he spent it on cocaine and he had to drop his classes. He was robbed of the rest of his money. Neal drafted Washington's April 29, 2011 statement based on Washington's account of what happened. Washington read the statement

and signed it indicating that he read or had read to him the statement and that the statement was a true and accurate account of his activities.

Neal did not tell Washington he would be released upon providing a statement nor did Neal tell Washington what to say. Neal did not provide Washington a copy of his April 29, 2011 statement because it is not the policy of the DOC to automatically give parolees copies of their offender statements. Washington could have requested a copy of the statement via an open records request or he could have been provided a copy by his attorney.

On May 3, 2011, Neal sent Arkansas a Violation Report and Compact Action Request informing them that Washington's April 22, 2011 urine sample tested positive for marijuana. Neal also requested that they review this report as well as the violation report he sent on April 26, 2011. Arkansas sent a response to the violation report on May 9, 2011, requesting Wisconsin to continue supervision and to notify them upon disposition of pending charges.

On May 10, 2011, Neal sent Arkansas a Violation Report requesting them to retake Washington because he had committed multiple violations while being supervised in Wisconsin. Neal received a response from Arkansas on May 25, 2011, stating a request has been forwarded to the Board of Parole for the issuance of a technical warrant. The response also indicated that once a warrant was received, Wisconsin would be notified and asked to conduct a probable cause hearing pursuant to Interstate Compact Rule 5.108. On May 31, 2011, Arkansas issued a Technical Warrant, #PB-11002302, and faxed a copy to the Milwaukee Secure Detention Facility ("MSDF"). Arkansas requested that Wisconsin conduct a probable cause hearing and forward their findings.

On June 3, 2011 while housed at MSDF, Washington was served with a Notice of Preliminary Hearing ("Notice"), which was scheduled for June 6, 2011, at 9:00 A.M. at MSDF. The Notice included the following alleged violations:

> i. On or about 4/13/11, Marcus Washington did consume marijuana and cocaine, a violation of Rule 21 of Washington's Parole Rules, and a violation of Rule 6 of Washington's Condition of Release;
>
> ii. On or about 4/22/11, Marcus Washington did consume marijuana and cocaine, a violation of Rule 21 of Washington's Parole Rules, and a violation of Rule 6 of Washington's Condition of Release;
>
> iii. On or about 4/23/11, Marcus Washington did consume alcohol and marijuana, a violation of Rules 1 and 21 of Washington's Parole Rules, and a violation of Rule 6 of Washington's Condition of Release;
>
> iv. On or about 4/24/11, Marcus Washington did act in a disorderly manner while at the 4th District Police Station, located in Milwaukee Wisconsin, a violation of Rule 1 of Washington's Parole Rules, and a violation of Rule 6 of Washington's Condition of Release.

(Neal Aff. ¶¶ 36-37, Ex. 1010.) The Notice informed Washington that the purpose of the hearing was to decide whether to maintain him in custody or to release him pending the final administrative hearing.

On June 6, 2011, a preliminary hearing was held at the MSDF before Magistrate Luann Anderson. Both Washington and Neal testified at the hearing. Washington was represented by counsel at the preliminary hearing and his attorney questioned Neal when he testified. At the conclusion of the preliminary hearing, Magistrate Anderson found probable cause for allegations 1, 2, 3, and 4 based on Neal's testimony, Washington's testimony,

and the evidence presented. Based on Magistrate Anderson's probable cause finding, Washington remained in custody pursuant to ICAOS Rule 5.108(f).

A copy of Magistrate Anderson's letter and full report was forwarded to the proper authorities in the State of Arkansas for a final decision on whether to retake Washington or any other action to be taken. (Neal Aff. ¶¶ 40, 44, Ex. 1011.) Arkansas decided to retake Washington and on June 12, 2011, Washington was returned to the state of Arkansas. Neal had no further involvement in the revocation of Washington's community supervision after he was returned to Arkansas on June 12, 2011.

3. ANALYSIS

Neal contends that he should be granted summary judgment on Washington's due process claim because Washington received a preliminary hearing that satisfied the requirements of due process. An individual on parole has a protected liberty interest associated with his status as a parolee. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). As a result, parole may not be revoked without providing the parolee due process of law. *Id.* Persons detained because of suspected parole violations are entitled to two separate hearings under the due process clause of the Fourteenth Amendment: a preliminary hearing soon after the individual's initial detention; and a hearing before a final decision is made on revocation. *Id.*

The purpose of the preliminary hearing is "to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." *Id.* at 485. The hearing must occur "as promptly as convenient after arrest" and "someone not directly in the case" must make the probable cause determination. *Id.* The parolee must be given notice that the preliminary hearing will take place, including the purpose of the hearing and what parole

violations have been alleged. *Id.* at 486-87. In addition, the parolee has the right to speak on his behalf, to present evidence, and to question any adverse witnesses if appropriate. *Id.* at 487. The hearing officer should create a report of what occurs at the hearing and, based on that information, determine whether there is probable cause to hold the parolee for the final decision of the parole board on revocation. *Id.*

The undisputed facts demonstrate that Washington received a preliminary hearing that satisfied due process requirements. He received notice of the time and place of the hearing, its purpose, and the violations he was alleged to have committed. Washington had an opportunity to speak and present evidence at the hearing, and he was allowed to question adverse witnesses. After the hearing, the magistrate judge found probable cause and explained her reasoning and the evidence relied upon to Washington.

Washington contends that the fact that he did not receive his preliminary hearing until forty-three days after his detention proves that Neal violated his constitutional rights. Here, Washington was an Arkansas prisoner being supervised in Wisconsin under the ICAOS. Pursuant to ICAOS rules,[2] receiving states must notify sending states of significant violations of conditions of supervision within thirty calendar days of discovery of the violation. Rule 4.109(a). Once the sending state is so notified, it is required to respond to the violation report within ten business days. Rule 4.109(c)(1). The ICAOS rules allow the receiving state to detain the parolee while this process takes place. Rule 4.109-1. If a parolee is subject to retaking for conditions of supervision violations that may result in a

---

[2] The ICAOS Rules are available at: *http://www.interstatecompact.org/Portals/0/library/legal/ICAOS_Rules.pdf* (last visited January 25, 2013).

revocation, the parolee is entitled to a preliminary hearing near the place of the alleged violation. Rule 5.108(a).

In this case, Neal notified Arkansas of Washington's violations on April 26 and May 3, 2011. Arkansas informed Neal that a request had been forwarded to the Board of Parole for issuance of a technical warrant on May 25, 2011. Six days later, on May 31, 2011, Arkansas issued a technical warrant subjecting Washington to retaking and requested that Wisconsin conduct a preliminary hearing. Washington received his preliminary hearing six days after that, on June 6, 2011. Due process requires that the preliminary hearing take place as promptly as possible after arrest, and the facts demonstrate that he did receive a prompt hearing. See *Morrissey*, 408 U.S. at 485. Therefore,

IT IS ORDERED that the defendant's motion for summary judgment (Docket #29) be and the same is hereby GRANTED; and

IT IS FURTHER ORDERED that this action be and the same is hereby DISMISSED on its merits together with costs as taxed by the Clerk of the Court.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 7th day of February, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge